615 A.2d 971

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, in her capacity as Liquidator of Rockwood Insurance Company, 13th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120, Plaintiff

v.

ARGONAUT INSURANCE COMPANY, 250 Middlefield Road, Menlo Park, California 94025, etc., Defendant.

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided Sept. 4, 1992.

388

Jeffrey Cooper, for plaintiff.

Edward F. Mannino, for defendant.

Before COLINS, and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

In this case we are asked to decide preliminary objections to a complaint filed in this Court by Constance Foster, Insurance Commissioner of the Commonwealth of Pennsylvania in her capacity as liquidator of Rockwood Insurance Company (Rockwood), against Argonaut Insurance Company individually and as representative of specified members of the National Workers' Compensation Reinsurance Pool, the Pennsylvania Workers' Compensation Plan and Reinsurance Pool, the Arkansas Stock Pool for Assigned Risks and the New Mexico Workers' Compensation Reinsurance Pool.

Rockwood seeks to establish the liability of Argonaut in this action in which Rockwood claims that it is owed certain amounts of money which arose under the following circumstances. Individual state pools and a Pool organization were established to provide a means by which the insurance companies could provide workers' compensation insurance to employers who could not obtain such insurance through the voluntary market. The purpose of the pool was to spread the risk among a group of insurance companies who participated

in the pool arrangement. For each state in which the National Pool operates, the members of the Pool, acting through their board of directors, contract with servicing carriers to write such insurance. The pool participants through reinsurance provide that the servicing carrier—in this instance, Rockwood—is reimbursed for the claims that it pays. In this case, according to the complaint, Rockwood was fully reinsured, received a servicing carrier fee for writing the insurance, remitted the remaining premium to the pool and received its reimbursement for claims paid and expenses until the first quarter of 1989. It received such payments from the National Council on Compensation Insurers (NCCI), a voluntary unincorporated association which managed the pools. In this action, Rockwood now claims from Argonaut, as an individual entity and as a representative pool member, the amount that Argonaut owes, pro rata, on claims paid out and expenses incurred by Rockwood.

Before addressing the preliminary objections to this complaint on their merits, we wish to note that they are in this case somewhat unusual. Argonaut commences its preliminary objections with six paragraphs of what it entitles "background," in which it recites a prior proceeding in this Court where the Insurance Commissioner sought a rehabilitation order to which the National Pool and the other pools objected, on the grounds that it sought improperly to restrict the set-offs that the pools claimed they had against Rockwood. In an equally unusual procedure, Rockwood in its brief to this Court opposing preliminary objections, attaches a portion of the testimony of an expert witness in that prior rehabilitation proceeding. Our disposition of this case will not in any respect rely upon these questionable procedures.

Argonaut's first preliminary objection is that Rockwood has not stated a cause of action. The validity of this contention depends upon a construction of the agreements into which Rockwood entered. These agreements include:

1. The Servicing Carrier Agreement dated October 4, 1983 entered into with the National Pool.

2. The Articles of Agreement of the National Pool.

3.  The Articles of Agreement of the Pennsylvania Pool.

4.  The Articles of Agreement of the Arkansas Pool.[1]

Since the preliminary objection before the Court is in the nature of a demurrer, we first examine the applicable principles. In *Satchell v. Insurance Placement Facility of Pennsylvania,* 241 Pa.Superior Ct. 287, 361 A.2d 375, 377 (1976), those principles are clearly outlined:

Preliminary objections in the nature of a demurrer pursuant to Rule 1017(b)(4), Pa.R.C.P., is merely an allegation by the defendant that the plaintiff's complaint has failed to state a cause of action upon which relief may be granted. Therefore, it is a "time honored principle that in passing on a demurrer a court cannot consider matters collateral to the pleading opposed but only such matters as arise out of the statement of claim or complaint itself ..." *Detweiler v. Hatfield Borough School District,* 376 Pa. 555, 558, 104 A.2d 110, 113 (1954). Further, every allegation in the plaintiff's complaint must be accepted as true. See, e.g., *Borden v. Baldwin,* 444 Pa. 577, 281 A.2d 892 (1971); *Cantanese v. Scirica,* 437 Pa. 519, 263 A.2d 372 (1970).

The essence of Argonaut's argument is that the contracts attached to the complaint do not support an action against it, but rather clearly express the intention of the parties that the pool shall be the sole responsible party to pay the losses and expenses of the servicing carrier, Rockwood. We therefore turn to these contracts which are attached to the complaint.

A reading of the articles of agreement creating the pools and the servicing carrier agreement between Rockwood and the respective pools shows that the operation was to be conducted as follows. The servicing carrier would write the insurance, collect the premiums, retain a certain percentage for its work and process the claims in accordance with certain

1.  Rockwood did not attach the New Mexico Pool agreement to its complaint; however, Argonaut attached a copy of this agreement to its preliminary objections. Pa.R.C.P. No. 1019(h). Both parties seem to agree that this agreement is not substantially different in any material respect from the others.

rigid standards compelled by the servicing carrier agreement, then to be reinsured by the National Pool.

The members of the Pool, on the other hand, would participate in the pool and provide reinsurance for the servicing carrier, without which reinsurance Rockwood could not write this business. The amount that the members of the pool would contribute to provide for expenses and for the reinsurance of Rockwood as the servicing carrier would then be pro rated among the pool members by the National Pool administrators. In order for this arrangement to operate efficiently and, indeed, to operate at all, no payments would be made by the individual members of the pool to the servicing carriers. Rather, all payments would be made by the pool. We now examine in detail those agreements—the servicing carrier agreement and the articles of agreement—upon which Rockwood's complaint is based.

The servicing carrier agreement provides some, but no definitive assistance in deciding whether the intention of the parties was to allow suits against the individual members of the pool or not. Except for the fact that the contract itself is between Rockwood and, to use a single example, the National Workers' Compensation Reinsurance Pool (and not the individual members) and that, understandably, all the obligations in it are expressed in terms of what duties Rockwood owes the *pool* and what the *pool* owes Rockwood, and, except for the fact that the contract provides that any required notice from Rockwood should be given to the *pool* at its offices in New York, we find nothing in this document so significant that it provides a clear indication of the intent of the contracting parties in this regard.

However, turning to the various pool agreements, we find, for example, in the National Pool, an agreement which requires the National Pool to make the reimbursements as follows:

> Payment of Losses and Reimbursement Therefor. *The servicing carrier shall pay all losses accruing on risks assigned to and accepted by it as each such loss becomes due and payable. On or before the 15th day of May, 1970,*

*each servicing carrier shall report to the Pool all claims
arising and losses paid to the end of March, 1970,* on
account of risks assigned to and accepted by it in accor-
dance with the provisions hereof under any Insurance Plan
in force in any state, and thereafter at such other times as
the Board of Governors may direct shall similarly report
with respect to all such risks all claims arising and losses
paid during the period covered by the reporting—together
with the then estimated value of all claims outstanding.

Within ten days after the receipt of such report, *the Pool
shall reimburse each such servicing carrier* as shown there-
on. (emphasis added.)

Thus, the clear and express terms of this agreement, upon
which Rockwood's complaint is based, is that the Pool owes
the obligation to make the payment. On the one hand, our
task would be made easy if the drafters of the agreement
clearly stated that the individual members were not responsi-
ble for the payment. But, on the other hand, Rockwood does
not point specifically to any portion of the agreements which
expressly obligates the individual members to make the requi-
site payments, and we conclude that the specifically included
provision quoted above is certainly one indication that the pool
is the entity Rockwood must look to for its reimbursement.[2]

In addition, all parties admit that the purpose of the pool
arrangements was to provide a vehicle whereby the individual
carriers could act collectively, not only to spread the risks of
reinsurance among each member and accomplish the duty of
providing insurance where none would be otherwise available,
but also to allow companies like Rockwood to operate without
any risk, collect premiums, retain a portion of the premiums
for their work and be reimbursed for any losses paid and
expenses incurred in paying or defending claims with the
backing of the pool. To allow Rockwood to sue now and

**2.** As indicated by the complaint, all payments to Rockwood prior to the
cessation of payments in 1989 were made by *NCCI*. This admitted fact
is also some indication that, over the years, Rockwood acquiesced in
the fact that the pool was the entity legally responsible for the pay-
ments.

collect from individual members would be to thwart the purposes of the pool.[3]

Rockwood also apparently claims that Argonaut is individually liable to it because Argonaut is liable to the pools under the assessment provisions of the articles of agreement. The difficulty with this position is that the pool agreements do not make the individual members of the pool liable to the servicing carrier, but only to the pool. The scheme as established by the agreements (both pool and servicing carrier) is apparent. The members of the pool are required to pay the pools and the pool pays the servicing carrier. To allow the servicing carrier to claim liability against the individual members would also be to rewrite the agreements, which we will not do.

To allow servicing carriers to sue the individual members of the pool solely because that member agreed with other members of the pool to contribute to the risk sharing, when that pool participant (Argonaut) had no contract with the servicing carrier and never expressly agreed in the contract into which it *did* enter to make reimbursement directly to the servicing carrier would, indeed, be to re-write the servicing carrier and articles of agreement as a single contract and cause chaos in the pool itself. It would rearrange the relationships between and among the parties, resulting in obligations not intended by them. This is especially the case if Rockwood's suit were allowed and Rockwood is obligated to the pool, either for

3. Extensive argument is made by Argonaut that the underlying purpose of this suit is to avoid the set-offs which the pool has against Rockwood. Argonaut also argues that, in the prior petition for rehabilitation, Rockwood adopted a contrary position to that which it espouses in this suit. In view of our holding that Rockwood has not stated a cause of action based on our construction of the contracts, we need not comment extensively on those arguments.

We merely note that Rockwood may have been thwarted, as Argonaut asserts, in its attempt to bar the pools from asserting set-off rights for the amount Rockwood owed to the pools. We need not consider Rockwood's motivation in bringing this action, but we do think it worthy of comment that, if Rockwood were permitted to sue Argonaut individually and as a representative, it would be logical and consistent under the same theory that Argonaut would have a pro rata set-off against the amount Rockwood owes to the pool.

premiums not paid or assessments not honored as an insolvent member of the pool.

Finally, as noted earlier, Argonaut argues that in a previous proceeding seeking rehabilitation, Rockwood asked this Court to declare that the pools could not assert a set-off. Argonaut makes much of the fact that in that proceeding Rockwood specifically asserted that "the amounts due to Rockwood under the servicing Carrier Agreement and as a servicing carrier for the Arkansas Stock Pool and Pennsylvania pool are due directly from the National Pools as administered by NCCI, pursuant to the Servicing Carrier Agreement *and are not due to [Rockwood] from other insurance companies.*" (Defendant's brief, p. 7.)

Of course, if that specific language were included in either the servicing carrier agreement or the pool agreements, it would be clear beyond any possible doubt that Rockwood would not be able in this suit to sue Argonaut as an individual member of the pool. But, we do not need to rely upon Rockwood's statement in the rehabilitation proceeding, for we are of the opinion that nothing in either the servicing carrier agreement or the pool agreements allows Rockwood to bring this suit against Argonaut and that every relevant part of the agreements point to the fact that Rockwood's cause of action is against the pools and not the individual members.

For these reasons, we conclude that Rockwood has not stated a cause of action in its complaint against Argonaut herein. Accordingly, we sustain this preliminary objection, and, because of our disposition, we find it unnecessary to consider the defendant's remaining preliminary objections based on Rockwood's purported failure to comply with Pennsylvania Rule of Civil Procedure 2153(a) governing suits against unincorporated associations. We also find it unnecessary to consider Argonaut's preliminary objections seeking dismissal of the complaint for failure to name the pools as necessary parties.

## ORDER

AND NOW, this 4th day of September, 1992, it is hereby Ordered that defendant's preliminary objection in the nature

of a demurrer pursuant to Pa.R.C.P. No. 1017(b)(4) is hereby sustained, and plaintiff's complaint is dismissed.